**STATE of Missouri, ex rel. Trish VINCENT, Director of Revenue, Plaintiff/Respondent,**

v.

**D.C., INC., d/b/a Dirt Cheap Cigarettes and Beer, Defendant/Appellant.**

No. ED 90740.

Missouri Court of Appeals, Eastern District, Division Four.

July 22, 2008.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 15, 2008.

Application for Transfer Denied Oct. 28, 2008.

304

Jeremiah W. (Jay) Nixon, Atty. Gen., Joan Frances Gummels, St. Louis, MO, for plaintiff/respondent.

John Woodson, Elizabeth T. Ferrick, St. Louis, MO, for defendant/appellant.

SHERRI B. SULLIVAN, J.

### Introduction

D.C., Inc., d/b/a Dirt Cheap Cigarettes and Beer (Appellant), appeals from the judgment of the trial court granting the Director of Revenue's (Director) cross-motion for summary judgment on its petition for forfeiture, and denying Appellant's counterclaim for declaratory judgment and injunctive relief and its motions for judgment on the pleadings and for permanent injunction. We reverse and remand.

### Factual and Procedural Background

The case *sub judice* arises out of the Director's seizure of cigarettes deemed contraband under Section 149.203.2[1] from several of Appellant's stores based on said cigarettes' manufacturers' non-compliance with Section 196.1003(b)(1).

In 1999, the Missouri General Assembly enacted Section 196.1003, which provides, in pertinent part:

Any tobacco product manufacturer selling cigarettes to consumers within the State (whether directly or through a distributor, retailer or similar intermediary or intermediaries) after the date of enactment of this Act shall do one of the following:

(a) become a participating manufacturer (as that term is defined in section II(jj) of the Master Settlement Agreement) and generally perform its financial obligations under the Master Settlement Agreement; or

(b) (1) place into a qualified escrow fund by April 15 of the year following the year in question the following amounts (as such amounts are adjusted for inflation). . . .

The required escrow payment for a "non-participating manufacturer," i.e., one not participating in the master settlement agreement, under Section 196.1003(b)(1) is based on the number of units of the manufacturer's cigarettes sold in the State of Missouri in the previous calendar year, and as set forth above, must be placed into a qualified escrow fund by April 15 of the year following the previous calendar year. The non-participating manufacturer that elects to place funds into escrow pursuant to Section 196.003(b)(1) must also annually certify to the Attorney General that it has done so.

If a non-participating manufacturer fails to comply with the requirements of Section 196.1003(b)(1), the Attorney General is authorized to bring a civil action on behalf of the State to force compliance, and once non-compliance is established, upon a court finding, said manufacturer can be penalized. Section 196.1003(b)(3).

In 2001, in order to aid in the enforcement of Section 196.1003, the Missouri General Assembly enacted Section 149.203. Section 149.203.2 provides:

Cigarettes that are acquired, held, owned, possessed, transported in, imported into, or sold or distributed in this state in violation of sections 149.200 to 149.215 or sections 196.1000 to 196.1003,

---

1. All further statutory references are to RSMo 2004, unless otherwise indicated.

RSMo, shall be deemed contraband pursuant to section 149.055 and are subject to seizure and forfeiture as provided therein. Any cigarettes shall be deemed contraband whether the violation of sections 149.200 to 149.215 is knowing or otherwise.

In the instant case, the cigarettes were deemed contraband and seized by the Director from Appellant's stores on February 3, 2006, pursuant to Section 149.203.2 and the authority set forth therein, because the Director determined the manufacturer of said cigarettes had not complied with its Section 196.1003(b)(1) statutory obligations as a non-participating manufacturer.

On February 21, 2006, Appellant filed a petition against the Director in federal court, alleging that the Director's seizure of Appellant's property was in violation of the laws and Constitution of the United States, and asking the federal court to interpret Sections 149.203 and 196.1003 under the Declaratory Judgment Act.

On March 16, 2006, the Director filed a petition for forfeiture against Appellant in state court. Appellant filed a counterclaim to the petition, seeking a declaratory judgment construing whether Sections 149.203 and 196.1003 permitted the seizure. During the pendency of this action, the Director conducted two more seizures on Appellant's stores, on February 21 and 22, 2007. Appellant sought and obtained a temporary restraining order (TRO) enjoining the Director from seizing any more cigarettes from Appellant. The trial court, in granting the TRO, found that Appellant was likely to succeed on the merits of its claim that neither Section 149.203.2 nor Section 196.1003 authorizes the seizures conducted by the Director, and that Appellant suffered and would continue to suffer irreparable injury by the continued seizures of its property by the Director. The trial court thereafter entered a preliminary injunction enjoining the Director from "seizing cigarettes acquired, held, owned or possessed by [Appellant] based on a Tobacco Product Manufacturer's alleged violation of § 196.1003 RSMo unless (1) a court of competent jurisdiction enters an order under § 196.1003(b)(3)(C) RSMo prohibiting the sale of the Tobacco Product Manufacturer's cigarettes in the State; and (2) the person from whom the cigarettes are seized has knowledge of the court's order prohibiting the sale of cigarettes in the State of Missouri."

Appellant thereafter filed a motion for permanent injunction. On May 11, 2007, the trial court held a hearing on that motion, receiving testimony, evidence and argument. On December 13, 2007, the trial court entered its judgment granting the Director's cross-motion for summary judgment on its petition for forfeiture, and denying Appellant's counterclaim for declaratory judgment and injunctive relief and its motions for judgment on the pleadings and for permanent injunction, finding that there was no requirement under either Section 196.1003 or Section 149.203.2 for a court determination that the cigarettes at issue are contraband or that the manufacturer commit two knowing violations before its cigarettes become contraband. This appeal follows.

### Point Relied On

In its point relied on, Appellant contends that the trial court erred as a matter of law in granting the Director's cross-motion for summary judgment and in denying Appellant's motions for judgment on the pleadings and permanent injunction, and counterclaim for declaratory judgment and injunctive relief, because the trial court's rulings were based on an erroneous interpretation of Sections 149.203.2 and 196.1003, in that under the plain language of the statutes and well-established principles of statutory construction, a court must

first enter an order under Section 196.1003(b)(3)(c) prohibiting the manufacturer's cigarettes from being sold before the Director can seize and forfeit the cigarettes as contraband under Section 149.203.2 for being possessed, sold, or distributed in violation of Sections 196.1000 to 196.1003.

### Standard of Review

■ In reviewing a court-tried case, the judgment of the trial court will be sustained unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Statutory construction is a matter of law, not of fact, and accordingly our review is *de novo*, and we give no deference to the trial court's determination of law. *Missouri Highway and Trans. Com'n v. Merritt*, 204 S.W.3d 278, 281 (Mo.App. E.D.2006). In reviewing civil matters such as forfeitures, the appellate court views the evidence in the light most favorable to the judgment, providing all reasonable inferences to the prevailing party. *State v. Sims*, 124 S.W.3d 486, 488 (Mo.App. W.D. 2003).

### Discussion

■ Forfeitures are not favored in the law and should be enforced only when both the letter and the spirit of the law authorizing the forfeiture are followed. *Sims*, 124 S.W.3d at 488, citing *State v. Hampton*, 817 S.W.2d 470, 472 (Mo.App. W.D.1991)(citing *United States v. One 1936 Model Ford V–8, etc.*, 307 U.S. 219, 59 S.Ct. 861, 83 L.Ed. 1249 (1939)). Thus, forfeiture statutes are strictly construed against the state, and every word, clause, sentence, and provision of the statutes are presumed to have been intended by the legislature to have effect and be operative. *State v. Gray*, 21 S.W.3d 847, 849 (Mo.App. E.D.2000).

The primary rule of statutory construction is to determine the intent of the legislature from the language used by considering the plain and ordinary meaning of the words used in the statute. *Dubinsky v. St. Louis Blues Hockey Club*, 229 S.W.3d 126, 130 (Mo.App. E.D.2007). Where the language of a statute is unambiguous and clear, this court will give effect to the language as written, and will not engage in statutory construction. *Id.* We presume that the legislature intended that each word, clause, sentence, and provision of a statute have effect and should be given meaning. *Id.* Conversely, we presume that the legislature did not insert superfluous language or idle verbiage in a statute. *Id.* Courts are not authorized to read a legislative intent into a statute that is contrary to the intent made evident by the plain and ordinary meaning of the statutory language. *Id.*

Section 196.1003(b)(3) provides:

(3) Each tobacco product manufacturer that elects to place funds into escrow pursuant to this subsection shall annually certify to the Attorney General that it is in compliance with this subsection. The Attorney General may bring a civil action on behalf of the State against any tobacco product manufacturer that fails to place into escrow the funds required under this section. **Any tobacco product manufacturer that fails in any year to place into escrow the funds required under this section shall—**

**(A) be required within 15 days to place such funds into escrow as shall bring it into compliance with this section. The court, upon a finding of a violation of this subsection, may impose a civil penalty to be paid to the State's general revenue fund in an amount not to exceed 5 percent of the amount improperly withheld from escrow per**

day of the violation and in a total amount not to exceed 100 percent of the original amount improperly withheld from escrow;

(B) in the case of a knowing violation, be required within 15 days to place such funds into escrow as shall bring it into compliance with this section. The court, upon a finding of a knowing violation of this subsection, may impose a civil penalty to be paid to the State's general revenue fund in an amount not to exceed 15 percent of the amount improperly withheld from escrow per day of the violation and in a total amount not to exceed 300 percent of the original amount improperly withheld from escrow; and

(C) in the case of a second knowing violation, be prohibited from selling cigarettes to consumers within the State (whether directly or through a distributor, retailer or similar intermediary) for a period not to exceed 2 years.

[Emphasis added].

The Director's seizure of the cigarettes from Appellant was premised upon the Director's belief of the cigarettes' *manufacturer's* violation of Sections 196.1000 to 196.1003, to-wit, by not paying the requisite funds into an escrow account for the preceding year in the manner prescribed by the statute. Accordingly, the Director acted upon its belief of the manufacturer's violation, by exercising its authority to seize the cigarettes, as set forth in Section 149.203.2:

Cigarettes that are acquired, held, owned, possessed, transported in, imported into, or sold or distributed in this state *in violation of sections 149.200 to 149.215 or sections 196.1000 to 196.1003,* RSMo, shall be deemed contraband pursuant to section 149.055 and are subject to seizure and forfeiture as provided therein. Any cigarettes shall be deemed contraband whether the violation of sections 149.200 to 149.215 is knowing or otherwise.

However, the statute does not give the authority to the Director to act *upon its belief* that a violation of the statute has occurred. Compare, ME. REV. STAT. ANN. tit. 36, Section 4404–C.3 (2005), where the State of Maine provides for the procedure of seizure and forfeiture of contraband tobacco products as follows: "Contraband tobacco products may be seized by a law enforcement officer or duly authorized agent of the assessor *who has probable cause to believe that the tobacco products are untaxed....*" Our statute has no such language. Further, the State of Missouri and its courts have previously interpreted the statute to contemplate a judicial determination that a manufacturer has violated the Act's escrow payment requirements. See, *State ex rel. Nixon v. Patriot Tobacco Co.,* 220 S.W.3d 889, 891 (Mo.App. E.D.2007) (State prevailed on its claim that the respondent manufacturer violated the act, and thus the court ordered the respondent to pay the required funds into escrow, and imposed the statutory penalties of attorney's fees and costs, but declined the State's request to impose civil monetary penalties allowed for in the statute.). The Director's interpretation of the statute in this case would undermine the statute's carefully crafted scheme of judicially imposed penalties. See, i.e., *Citland, Ltd. v. Comm. ex rel. Kilgore,* 45 Va.App. 268, 610 S.E.2d 321, 324–25 (2005) (Attorney General lacked discretion to exclude the manufacturer from directory of manufacturers in compliance with escrow requirements solely for nonpayment of proposed penalty not yet adjudicated by courts; only court had authority to impose civil penalty.... Virginia Court of Appeals found that the judicial process overseeing the imposition of civil penalties would be sidelined, almost to the point of irrelevancy, if the Attorney General could collect

proposed penalties as a tribute for admission into the directory.).

Rather, our statute, Section 196.1003(b)(3), provides that the Attorney General may bring a civil action against any tobacco manufacturer that fails to place the required funds into escrow. Then, under Section 196.1003(b)(3)(A), the manufacturer has 15 days to place the required funds into escrow, at which time it would be in compliance. If, assuming that the manufacturer in the case at bar was in violation of the statute and thereafter complied with subsection (A) as such, then the Director's seizure of the cigarettes would be premature and without authority. Also, subsection (A) provides that the court may impose a penalty upon the manufacturer for non-compliance with the escrow requirements, "upon a finding of a violation of this subsection." Reading this section *in pari materia, Citizens Elec. Corp. v. Dept. of Revenue,* 766 S.W.2d 450, 452 (Mo. banc 1989), with the entire statute compels a conclusion that the statute contemplates *a court determination* of a manufacturer's alleged violation of Sections 196.1000–1003 before forfeiture and penalties will be imposed. There is no language in the statute supporting a conclusion that the Director has the power to unilaterally impose the penalty of seizure prior to a judicial determination. " '[W]here special powers are expressly conferred or special methods are expressly prescribed for the exercise of power, other powers and procedures are excluded.' " *Yellow Freight Systems v. Mayor's Comm'n,* 791 S.W.2d 382, 387 (Mo. banc 1990), quoting *Brown v. Morris,* 365 Mo. 946, 290 S.W.2d 160, 166 (1956).

Furthermore, if the Director were permitted under the statute to unilaterally decide when a manufacturer was in violation of the statute and thus invoke the penalties of seizure and forfeiture of its product, the provisions in Section 196.1003(b)(3)(A),(B) and (C), giving the court the authority to decide when a violation of the statute had occurred would be superfluous and possibly meaningless. Such a reading of the statute is prohibited. A presumption exists that the legislature does not insert idle verbiage or superfluous language in the statute. *Cook v. Newman,* 142 S.W.3d 880, 892 (Mo.App. W.D. 2004). Rather, we presume that the legislature intends that every word, clause, sentence, and provision of a statute have effect. *Id.*

In the instant case, the Director supports its position by reading the statutory provisions at issue in isolation from each other. The provisions of a statute are not to be read in isolation but construed together, and if reasonably possible, the provisions are harmonized with each other. *Bachtel v. Miller County Nursing Home Dist.,* 110 S.W.3d 799, 801 (Mo.banc 2003). Based upon our construction and harmonization of Sections 196.1000–1003 and 149.203, we find that the Director is without authority to seize the cigarettes at issue from Appellant prior to a court determination of the cigarettes' manufacturer's unremedied violation of the escrow requirements set forth in Section 196.1003(b)(1).

For the foregoing reasons, Appellant's position in its appeal is well taken. Accordingly, Appellant's point on appeal is granted.

### Conclusion

The judgment of the trial court is reversed and remanded for proceedings consistent with this opinion.

MARY K. HOFF, P.J., and GEORGE W. DRAPER, III, concur.